On the next gate. 17-0607, Martha Nunez versus Jorge Diaz. One, two, three, four, five, six. Okay, with the lawyers who are going to argue this case, please approach the bench and introduce yourself to the court. You can approach the bench. Lisa Vedral, Counsel for Plaintiff Appellant Martha Nunez. My name is Steve Beresey, Attorney for the Appellee Boris Diaz. And do you want to reserve some time for rebuttal? Yes, please, Your Honor. How much time would you like to reserve? I would anticipate maybe about three or four minutes would be sufficient. Okay, let's proceed then. Thank you, Your Honor. You know, kind of as a housekeeping matter, I just wanted to ask you one question. Sure. Your theory apparently from your briefs is that, you know, this post, the top of this post was loose and that was the dangerous condition. Correct, Your Honor. However, it's not in your complaint, and you've never made a motion to amend that complaint. Your Honor, within the circuit court, in the motion to reconsider, as we mentioned in our brief, we did move to amend the complaint in the briefing and the motions to reconsider. And also, you know, it has been our position that we've had sufficient facts and that the plaintiff expounded upon those facts. Is there an order here saying that that was denied? There is no specific. The court did not enter an order on that motion. Okay, and you've never filed an amended complaint. Correct. And you've never asked the appellate court. You know, the appellate court has the authority to amend complaints, too. Do you know that? Correct. We did not ask for it in our initial brief, but we did ask for it in the reply brief, and obviously early today we'd be asking the appellate court. Well, you know, that's not the appropriate way, and I'm sure you could figure out the appropriate way. But go ahead. Proceed with your argument. Sure. Your Honor, if it pleases the court, my name is Lisa Vajero. As I said, I mentioned the plaintiff appellant Martha Nunes. We are requesting that the court reverse the grant of summary judgment by the trial court for the reasons set forth in our briefs, which I will expound upon today, the basis in our brief, and then briefly speak about the basis that the defendant stated otherwise, that summary judgment should be affirmed in their favor. First of all, the court was very clear that the ruling in this case was made with respect to Part 2 of the defendant's motion for summary judgment and finding that there was not an unreasonably dangerous condition in the stairwell. Our position is that the loose stairway post cap was a defective condition and that this situation is distinguishable from the case that the defendant relied upon, the Cardeen case, in that there were no defects upon which the plaintiff fell. She tripped her heel on a stair. Here, the plaintiff admittedly did not know what caused her to initially start to lose her balance, but she reached out for the stairwell cap, which came loose and came out. She testified succinctly that this stairwell cap coming loose caused her to further lose her balance and fall down the stairs. So in that, we believe that there's a question of fact that there was a defective condition for the circuit court to have found otherwise was the court not taking in a way most favorable to the plaintiff, the testimony that was provided by the plaintiff that there was a defect. Case law has held that even if there is a slight defect, that can lead to a question, a triable question, for the jury to make the determination. And while this stairwell cap may not have been an extreme defect on the stairway, it was a defect. And also our position is that that was a proximate cause of the plaintiff's falling down the stairs, an ultimate injury. Defendant addressed proximate cause. Sure. This plaintiff testified that she didn't know what caused her to fall. Correct. So there was no negligence in her tripping or falling. Do you agree to that? I agree that the initial start to this occurrence, she did not testify that there was a defect on the stairs. So your theory is that although she may have had an idiopathic type of fall, if there would have been a secure cap, she could have held on and avoided falling. Correct. That's your theory. That is our theory. Correct. The cap was there. The post was there. She relied upon it being there. She reached out to it. It came loose, which then caused to contribute to her falling down the stairs. And that goes to the point of proximate cause, where there can be more than one proximate cause to satisfy that burden. And in this instance, it does appear that there are contributing factors, one being that she began to trip a bit. And then the contributing cause is that she reached for the stairwell cap, which was loose. It came off, and it caused her to ultimately fall down the stairs. Now, what is your theory that there's a duty here when this stairway only applies to the second floor and it's not necessarily a common area? What is your theory of duty here? Certainly, Your Honor, that is the argument made by the defendant, which we also addressed in our reply brief. Our theory is if you look at the case law in the first district, the Gula case is the most similar to the fact pattern that we have in this case. And as a first district case, lays out a factorial approach in facts to be determined by a jury in determining whether there's a duty. That is one theory, and we'll finish upon that in a second. Another situation here is that the defendant actually admitted during her deposition that this stairwell was a common area under her control. And that is testimony that she laid out that defendant then tries to explain in briefing and interpret. But nonetheless, that is testimony that she provided and that we cite for in our brief. But again, it was not within the province of the court to make some re-judgment on the control issue, which we think was correct, because it was not within the province of the court to weigh that testimony and the credibility of the witnesses and to do so. Are you basing it on the fact that the defendant testified that it was a common area, or are you basing it on the fact that the facts and circumstances of what the defendant said about repairs takes it out of the area? Both, Your Honor. These are two points. My first point would have been to state that the defendant admitted it during her deposition, and admitted that she had control over the stairwell, and that alone. I think the defendant said somewhat. Yeah, it's still control. She still defined that the stairwell is a common element. So taking that, that alone is our first basis. That alone we believe was sufficient for what the circuit court found, that summary judgment on the control issue was not the basis for granting summary judgment. The second part to that is that a landlord, even if, you know, and there's a question whether this was part of the premises, there is a question. But even if it was determined to be part of the premises, a landlord can still retain control over an area such that they still have the duty to maintain the area and use ordinary care. And that is the argument to which the Gula case gets to, and also the case relied significantly upon by the defendant, the Segal case, the dissent lays out a very compelling description. Gula didn't have a written lease, right? Gula did not have a written lease. And in the opinion, they very, in this instance, we don't have a lease that specifically says stairwell is part of the common element. But it does say that the lessee will keep and maintain the premises and appurtenances in good and sanitary condition and repair. Correct. The lessee is your client, right? The lessee is my client. Okay. So speak to that. Sure. And there's nothing by way of evidence in this case that the defendant testified or either party testified that the appurtenances included this stairwell. Certainly, fixtures within the unit were the responsibility of the plaintiff. We don't question that this was a lease. We're responsible within the unit. We disagree that this stairwell was part of the unit. And to do so, to consider that as an appurtenance would be giving an interpretation of this lease where there's no facts to support that interpretation. The facts that we have are the defendant's testimony that this was a common area under control. And then, you know, getting further on, if you want me to continue on, the actions that she then did and her further testimony that goes into the facts that should be considered by a jury that's addressed by the gruel case. Well, in the facts of this case, you say that, you know, it was a common area. It was common to the plaintiff. Who else was it common to? The unit as described in the depositions is a two-flight unit. There's the mother of the landlord, which resides on the first unit. What does the first unit have to do with the stairway? It's open to both. It's open to both units. If there's a doorway that's not locked, that's open, that was left open, it's accessible. It's accessible to both units. Is it used by the other unit? There's not testimony one way or another whether there would be any use by. . . Why would there be any use? I mean. . . Why would someone on the ground floor use the stairway? Sure, but arguably, if it is open for the ground floor for someone to sit upon the stairs, you know, in that area. But why would they take the stairs? As Justice Ellis said, they're on the first floor. Why would they be involved with the stairway? I can't speak to that because that individual was not deposed, but getting, you know. . . And it was under lock and key, right? It was. . . They didn't lock it. They didn't lock it. And who had keys? I believe, as I recall from the facts, that the landlord and the tenants had. . . Not the first floor person? I don't know one way or another whether they did. Okay. And, however, if you look to, you know. . . If you look to the factors. . . What did they say? They admitted it was a common element. Regardless of what the situation comes out to be, there's an admittance there. In fact, they said that she would not have been able to repair that.  Very. . . So, and that's getting. . . The factors considered by the Gula Court, which then we lay out, are. . . One, the defendant testified clearly that the plaintiff not only shouldn't make. . . Wouldn't be responsible for making repairs in the stairwell in the area, but couldn't. So, it would be illogical to hold the plaintiff responsible for a defect in the stairwell when the plaintiff, by the defendant's own admission, is not permitted to repair the defect in the stairwell. That is one very important point. Going back to one thing you said, though, about the door and the key. In the Gula case, there was also the same situation where there was a door and a key. And the court determined that that was not dispositive of whether there was control over the area. And, also, if you look to the facts that the plaintiff was permitted to paint inside. . . With inside the unit, the plaintiff was not permitted to paint in the stairwell. The plaintiff was not permitted to store things within the stairwell. The defendant landlord paid for the electricity in the stairwell and not within the unit. The defendant changed the light bulbs in the stairwell and not within the unit. These are all factors that if a space is within the leased premises, the landlord did not have control. The landlord would not be taking these actions and admit responsibility for repairs. The landlord was also testified and answered in her interrogatories that she was performing inspections of the stairwell area. So we know that she was entering the stairwell area for purposes of inspecting it. Why would she be coming in and inspecting this area on a regular basis if this was not an area under her control? Those factors, as dictated by the Gula holding, are factors that should be considered. And factors that, in this instance, are sufficient and did defeat and should defeat summary judgment on that grounds. And it should be reserved for the trier of fact. Do you want to reserve some time for your rebuttal? Yeah, I believe I did before and I also rely upon that. And also, to the extent that I have not addressed anything, I would also like to rely upon the briefs. Thank you. Counsel, before you start, how do you get around the fact that the defendant testified that only he could make repairs and that he would pay for those repairs himself? Well, Your Honor, let's look at the context of that statement from the deposition. And the context was asking about structural repairs to the staircase. That was the line of questioning at that later point in the deposition. So it is basic that a landlord retains responsibility for structural elements of a property, really regardless of what the lease says. The lease could say anything in the world, but the case law has interpreted the landlord as being responsible for structural elements. So her testimony on that point is consistent with the landlord's responsibility that is non-delegable as to structural elements. Is that structural to fix that gap? No. So what you're saying is that when the defendant said that, he didn't mean that they couldn't make ordinary repairs? Correct. But that isn't what he said, though, exactly. Then why wouldn't you have clarified that on the deposition? I don't believe that it was necessary to clarify because, again, the line of questioning was as to structural changes, and that was consistent with the duty to repair. Perhaps had I known I'd be sitting here facing that question, I would have clarified it. However, my client was also unequivocal in the deposition, and counsel has been a little fast and loose with some of the facts here, one of which is the statement about the common elements. My client was unequivocal in the deposition that this second-floor stairway is the duty of the tenant to repair. Now, let me ask you this. Assuming that everything you just have said is true, because you know your case better than anybody, so certainly better than us, doesn't that create an issue for the trier of fact to determine whether he meant structural or whether he meant ordinary repairs? No. First, before we even get into a party's interpretation of the lease, we look to the lease agreement itself. That's under every test that's been really enunciated. C, though, makes it very clear it's a two-part test. Gilly v. Cadell, First District from about 10 years ago, follows that as well. The Gula case talks about the factors in the second part of that test. So the first part of the test is to look to what does the lease agreement say. If the lease agreement says the duty to repair, the demise premise is with the tenant, and that's all it says in this case. There is no duty to repair enunciated in the lease agreement that places any duty upon the landlord to repair anything. So if the duty to repair is in the tenant with the lease, we don't even get to that. Second, it's quite dangerous to – I want to make sure I'm following you. You're saying there's no duty on the part of your client in the lease to repair? Correct. The paragraph 11 just lists the duties of the lessee. It's not one of those that says lessor is responsible for this or that, and so under the lease I am saying that. Again, I agree that structural elements, regardless of the lease, are for the landlord to repair. So in the two-part test – Do you think that – I'm sorry to interrupt you again. Do you think when it says the lessee shall keep and maintain the premises and appurtenances, that includes the staircase? It absolutely includes the staircase. And that is clearly shown in the cases that I've cited in support of that point. The word appurtenance is not something that I would use, say, hey, take the appurtenance up to the second floor. However, in the context of property law, in the context of leases, it's used all the time, has been used all the time for more than 100 years. Appurtenances include a variety of different elements. Anything from a garage, a fence, a sidewalk, and a stairway are all included in that. An appurtenance is something that belongs to or attaches to something else. And this second-floor stairway that exclusively serves the second-floor unit that the second-floor tenant gets a key to lock everyone else out of, there's no surprise at all that this would be part of that unit to the tenant. She's got a key to lock everyone else out of it. And looking to those cases, the Woods case is from a while ago, admittedly, but that case is very clear talking about how entrance and passageways are appurtenances and that those appurtenances are part of the demise premises as long as they are not reserved under the landlord's control for the use of the tenants in the entire building. So in the step one of the analysis, this is an appurtenance, and we don't get any farther than that. It's very dangerous, again, to ask laypeople to try and interpret lease agreements. If that was sufficient, then plaintiffs just saying, no, the landlord had the duty of repair, would be sufficient to create an issue of fact. That's not proper interpretation of a lease agreement. And again, the unequivocal testimony on this point from my client was that the second-floor stairway is part of the demise premises and all the duties were with the tenant. There was a little confusion, I admit, because of a poorly worded question by not this plaintiff's counsel, but a colleague, who asked, can you store garbage outside in the stairways? And so my client, you can't just cherry-pick parts of the deposition. So when my client then clarified, wait, when you're saying stairways, are you talking about the outside or the inside? She says the outside stairway, that's part of the common elements. The inside stairway, she's unequivocal, is part of the premises' demise to the plaintiff. Well, your client said that the lessee would not be allowed to paint the staircase pink. That was a very speculative line of testimony. The trial court deemed inadmissible, as I pointed out in my response to Motion to Reconsider brief, and I believe it would be inadmissible as to whether or not anything actually happened during the course of the lease, because none of these things actually happened. The garbage and the bikes in the stairwell and painting the stairway pink, none of those things actually happened. So testimony after the fact is not sufficient. That is plainly stated in the Gilly v. Caddell case. In that case, the testimony by the landlord after the fact was even stronger. In Gilly, the landlord says, I will prepare this if someone brought it to my attention. And in Gilly, the first district appellate court just 10 years ago said that is not sufficient to go back in time when there are no clearly delineated acts. And what we have here is no clearly delineated acts. There is no pattern of repairs showing control in the landlord. So that is why as to the second part of that test, even aside from the lease agreement, the control factors, looking at Goula, control factors 1 through 5 all weigh strongly for finding that the tenant has the duty to repair. And I would like to comment on Goula briefly. In that case, it makes perfect sense why the landlord was held to retain control of enough of the stairway to be actionable. The landlord's own apartment had a light switch that controlled the light in that stairway. That is very strong control over that stairway. And the issue in that case was improper lighting. So of course, if the landlord controls whether or not the light is on, and the problem is whether or not the light is on, that becomes an actionable amount of retained control. There is nothing similar in this case. First, there is no allegation of improper lighting. And second, the only actions of the landlord are to make sure that there is power and electricity in that stairway, which is required by the Municipal Code of Chicago. And the landlord can't be held responsible for violating those ordinances. So it would really put landlords in a trick bag if you said, you have to abide by all these ordinances, you have to have light in these stairways, but then you're responsible for everything in the stairway now because you're following the law. That would not be proper. And I'll also touch on counsel's point as to the Segoe dissent. In the Segoe dissent, the court then, the dissenting justice, was looking at the prior landlord's actions, which evidenced strong control. In that case, the prior landlord was making repairs and had that type of factual scenario where there was consistent repairs being done. And so when the new landlord took the lease, the dissenting justice said, hey, you take the lease pursuant to all those provisions, and you're bound by the acts of the prior landlord. And so that pattern of repairs is what should have reached a different result in this case. Again, those are not facts that are apparent here. There's no evidence of any repairs at any time by my client, Ms. Diaz. Was there any evidence in the record about who kept the staircase clean if it snowed, who shoveled the snow off, that kind of thing? Well, this was an interior staircase, and so there was no snow. Bad example with the snow. But was there any testimony about who was – was there any maintenance done on it? Was anybody doing anything in that regard? There was no testimony one way or the other. The testimony focused on the use of the stairway, which was used on a daily basis for the tenant. And then my client mentioned at what point she would go, you know, as her habit to go on occasion. She said monthly at one point. At the end of her deposition, she testified she made like two visits to that stairway during the entire year that they lived there. So my client's connections are very limited. And if anything, she's doing them for the benefit of the tenant, as in Nita versus Spurgeon, where there was consistent water deliveries by the landlord, but it was for the benefit of the tenant. And that, again, is not sufficient to impose a duty to control on my client. I would like to briefly touch on the first issue. And Your Honor, Justice Gordon did almost take the words out of my mouth, that there was no pleading in the complaint here as to the specific condition of rights. Counsel represented that there was a motion to amend that was made in the trial court. However, a close reading of that, it's in the, I believe in the motion to reconsider brief. Excuse me. A close reading of that shows that there's nothing about a new and post cap. The request to amend in the trial court in that brief is related to handrail ordinances. Again, there was no ruling ever on that. There was no complaint. There was no even handrail ordinances identified. And any handrail ordinance issue is mooted by the reply brief on appeal, where counsel stated that plaintiff's own testimony is not that a lack of handrail caused this. They're focused solely on the new and post cap. In a premises liability complaint, in a fact pleading state, you have to put forth the facts that entitle you to judgment. And in premises liability complaints, the condition, the dangerous condition, that's really the whole thing. It's not a tremendous burden, as the gold case indicates. It's not a tremendous burden to ask people to simply identify the condition that is an issue in a complaint. Plaintiff failed to do so. And plaintiff failed to have an actionable complaint. So the trial court properly granted summary judgment. And plaintiff has never properly requested an amendment. And, again, as you pointed out, not in the initial brief on appeal as well. And one more thing I'll say about that. The People X.R.L. final case that was cited by plaintiff in reliance on that point, that is actually a great example of the specific facts that should be put out. They've got a specific agreement, the details of the agreement, specific acts and furtherance of that agreement. There were a lot of specific facts in this case. Here, plaintiff thinks they shouldn't be allowed to or shouldn't be required to even identify the condition. That would put us in a notice pleading, not a fact pleading situation. If there are no more questions from your honors, I thank you for your time and the opportunity to argue this in front of you. And I ask that you affirm the judgment of the trial court for the reasons that I've discussed and I've stated in the briefs. Thank you. Thank you. Thank you, your honors. Very briefly, as stated, we did make a request in the trial court to amend the complaint and the court did not address that. They're obviously not- But whose fault is that? Is that the way to make a motion to amend in a motion to reconsider? You make a motion to amend. Do you do that as a separate document? Not necessarily. What rule says you could do that in a motion to reconsider? Also, oral. I mean, I believe that there's no transcript. You can make oral motions to amend? We've made oral motions to amend. What rule says that? I can't speak specifically to a rule today that allows for that, but I- You are bringing it to the attention of the court, right? Is that what you're trying to say? I'm sorry, what was that? You are bringing it to the attention of the court. Correct, correct. The lease is silent as to what is an appurtenance and there's not testimony that this was an appurtenance. There are actions by the defendant and statements which show otherwise. All the arguments that counsel just made furthers the fact that there are tribal issues, genuine issues of material fact in this case, and that a jury should resolve whether the control, the amount that the defendant reserved control, retained control in this stairwell. Just to highlight the point, counsel mentioned structural repairs. The deposition testimony doesn't say structural repairs. The testimony says that the plaintiffs are not permitted to make repairs in this area and so that puts plaintiff in a trick bag as far as what they could do in this area and the defendant was responsible for the repairs. The facts show that the defendant also paid for the electricity, not just controlled electricity, but paid for electricity and changed light bulbs. A landlord is not doing that within the premises. We did not, counsel did not speak to the specifics of the ordinances. I don't believe in the briefs, correct me if I'm wrong, but certainly if it was within a premises, then the ordinances would not apply. While this is an internal stairway, it was not an internal stairway in the sense of some of the case law the defendant cited where it was a stairway which was actually walked into a unit and within the unit. As I said, we rest on our briefs to the extent anything else, any points were not brought up and we ask that the court reverse the finding of summary judgment by the circuit court, the circuit court finding summary judgment on the unreasonable, finding that there was not an unreasonably dangerous defect in this case and also as we have requested previously in the trial court, we request permission to amend the complaint should the court within its power and discretion. Any motions to amend should be in writing. Okay. Okay. Certainly. All right. Well, thank you very much. Thank you. I want to thank you for some good oral arguments. You gave us a very interesting case and we will take it under advisement. I want you to know that Justice McBride will participate. She's not here today, but she will listen to these arguments and she will be part of the deliberation on this case. Thank you, Your Honor. Court is adjourned.